May it please the court, my name is John Bolin of the firm of Bolin & Schall, here representing Appellant Defendant Tyrell Braxton. Before the District Court's sentencing colloquy, Judge Jackson observed that he had historically not used the cross-reference table because he believed it required the court to override the presumption of innocence. Now the District Court did not elaborate on that statement, so I'm not quite sure what to make of it, but ultimately the District Court's reasoning was a misapplication of the burden of proof in this case. The District Court was required to decide whether the government had disproved self-defense as a defense to the killing in order to use the cross-reference table and sentence Mr. Braxton to 12 to 13 years more than he may have gotten otherwise of years in prison. And that's not what the court did here. For example, in the court's third point, Judge Jackson recounted that there was no evidence that the decedent, Mr. Musiwa, had reached for or pulled out his weapon. And of course, that just turns the burden of proof on its head because there was also no evidence that he didn't. Counsel, you're on clear error review, right? No, Your Honor. I don't believe so. Why not? Because we're talking about the ultimate application of law to fact, and there is deference in that determination, of course, but I don't believe it's clear error review. Also, the District Court didn't have any facts or the District Court didn't have any testimony or other sources of facts regarding this incident other than the videotape, which this court can review with its own eyes. I'm not aware. The District Court said in the portion of the transcript that you referenced that this was the first time or historically hadn't used the cross reference. But I'm persuaded in this case for the first time that the combination of facts and circumstances available to me make it a proper case to apply the cross reference. And then he went on to make factual findings. Isn't it your burden on appeal to show, to prevail, that those factual findings are clearly erroneous? In other words, that the District Court's view of the evidence was impermissible? Well, yes, but what we're arguing here is not that he made clear errors in finding facts, but rather that he applied the wrong burden of proof. It's true that there was no evidence that Mr. Musiwa pulled the gun out of his pants or that he had shown it. But the record is quite clear that there's no evidence either way. It's impossible to see what was done or what was said in those moments leading up to the  There's a person standing in the way of the video camera's lens. And so you don't know what's happening there. The government actually misstates the facts in that regard. It relies heavily on this inference that he might have had hands in pockets. Of course, it does look like he, Mr. Musiwa, had his hands in his pockets before the parties got close to each other. But then those hands are obscured by both the fence and by another person at different times in the video. Now, I'm not aware of any Tenth Circuit precedent that says that this court can review de novo factual findings when the only evidence is indisputable documentary evidence or video evidence. But the Colorado Supreme Court does do that, and many other courts do, because the reason this court often defers in such strong ways to the trial court's determinations of factual findings is because the court is there listening to testimony and making credibility decisions and synthesizing all the evidence on the issue. But on this particular issue, whether it might have been self-defense, the only evidence that applies is the videotape. And the court can see it with its own eyes that the court can't know whether this was self-defense or not. The video doesn't have any audio with it, so we don't know what was said by either party. And of course, the video is obscured as to what exactly was happening with these two men on that street corner at the time. And so under those circumstances, our argument is that the lack of evidence about what happened cannot weigh in favor of finding no self-defense. Rather, that lack of evidence must be interpreted to mean that the prosecution did not meet its burden of persuasion by a preponderance of the evidence that no self-defense occurred here. Now, as the court knows, we cited several cases in the opening brief that illustrate the kinds of situations where the self-defense defense in this context doesn't work. And all of those situations included other evidence of parties' intent and other circumstances. So, for example, in the Mills case, the defendant had told others that he was going to kill a rival gang member as revenge for the killing of his brother. And in the Munn case, there were threats before the actual shooting occurred. That's not the case here, as the government points out in its brief at page 3. Counsel, help me understand. I'm still struggling to understand your framing of this as a misapplication of the burden and not an issue that we review on clear error. Do you agree the district court correctly stated the applicable burden here as a matter of law? Yes, the district court did. And so why isn't it necessary for you to prevail to show on appeal that the district court's factual findings in support of the application of the cross-reference were without basis in the record? I mean, it seems that that is what you're arguing, but that's clear error review. No, Your Honor, that's not our argument. For example, with the third point that the district court made, the court observed that there was no evidence that Mr. Musiwa had reached for or pulled out the gun. We don't dispute that. That is a true statement of the facts as they lie. But the dispute here is about what that means. Once you find that fact, what does it mean? And how do you apply the burden of proof to it? Although the district court correctly stated the burden of proof that he was going to apply, his actual, the court's actual reasoning was incorrect because the reasoning was not applying the proper burden. The evidence was neutral at best on the issue of self-defense. Can I just pause you there? How about the fact that there were five shots? Yes, Your Honor. From that, that this isn't self-defense. It's not self-defense because there are five. There wasn't one that would have done the same thing. Your Honor, I believe that that's a matter that's outside the can of an ordinary fact finder. And there was no expert. Okay. I'm sorry. So the district court could not make that finding? Is that what you're saying? Yes, Your Honor. And why is that? Uh, because there was no expert testimony or other evidence to establish that connection. The court properly. What would expert testimony say about, I mean, what would expert testimony say about the number of shots? Well, expert testimony could establish, for example, that in most self-defense encounters, X number of shots were used. And if more were used, that it's more likely that it was not self-defense. There are, of course, other circumstances. It is within the knowledge of an ordinary fact finder. If the shooter had shot a few times, waited, everyone else ran away, walked over to the victim and shot them again while they're laying on the ground, that we all know that that suggests not self-defense at that point. I mean, that's similar to the Taiha case. Didn't he shoot him four times in the back after he shot him once in the front? Your Honor, the testimony on that issue was two shots in the back, one in the hip, one in the leg, I believe, and one in the chest. Right. And so we don't know with that testimony, which of these shots came first. Um, and we, and it's not four shots in the back. Well, the back ones couldn't have come first. Could they?   Your Honor. Okay. But we don't know which of the other three was first. Okay. But we know that two in the back must've been last, right? Yes, Your Honor. I believe so. Okay. Well, then why does it matter what the, the other ones, where they came in? Well, because all of the shooting happened in a very compressed amount of time, under two seconds by my read of the video and the time required for a person to perceive what's going on and send the signal to their hands to stop shooting, you know, things happen quickly. So under, yes, yes, Your Honor. Please finish your answer to Judge Ide's question. Under the totality of the circumstances here, we just don't have evidence sufficient to disprove self-defense by a preponderance of the evidence. And, and that's our argument today. Moving on to the harmlessness issue. Can I ask you one other question before you move on to the harmlessness? What, in your view, is the affirmative evidence that the district court relied on to support the application of the cross-reference? That Mr. Braxton had showed the pistol and handed it to others before, before the encounter and the shooting, that the victim was shot five times, that there was no evidence that the victim had reached for or pulled the gun out of his pants. And then the district court also relied on the social media evidence where Mr. Braxton told friends of Mr. Sayers, Mr. Lumumba Sayers Jr., that he didn't shoot Mr. Sayers. And the district court relied on that fact for the absence of any chatter on social media about Mr. Braxton's shooting of Mr. Busiwa. And it's your position that that evidence is neutral. Is that, is that right? In other words, that evidence does not support, it is not a permissible view of the evidence, in other words, to support the application of the cross-reference, what you just recited. That's your position. Yes, Your Honor. If there are no further questions at this time, I'd like to reserve the remainder of my time for rebuttal. You may. Thank you, Your Honor. May it please the court. Kyle Brenton on behalf of the United States. The district court did not clearly err in finding that Braxton did not kill Busiwa in self-defense. I'd like to first touch on the burden argument, then turn to how the evidence supports the district court's finding, and finally touch on harmlessness. Now, the burden argument that Braxton makes here is entirely a red herring. It's an attempt to obtain de novo review over a factual finding, which I think was explicitly argued by my colleague. But it's clear from the transcript that the district court correctly understood the burden. In fact, on page 871 of the sentencing transcript, the district court explicitly says, the burden is on the government to disprove, well, the burden is on the government by a preponderance of the evidence. And the notion that it was the government's burden to disprove self-defense is all over this transcript. It was heavily discussed at this hearing, particularly in light of the state prosecutor's testimony. So there's really no question that the district court understood this burden correctly. Braxton also cannot point to any part of the record in which the district court required him to prove anything, made any suggestion that Braxton had to put forth evidence of anything in order to establish a self-defense defense. So the only argument Braxton is presenting here is that the evidence was neutral. So by implication, the only way the district court could have applied the self-defense, pardon me, the cross-reference is by misapplying the burden. But that's just factually incorrect. In reality, the facts supporting the district court's finding all point in the same direction that Braxton did not kill Musiwa in self-defense. So let's start with Mr. Musiwa's conduct. It's clear on the video, Mr. Musiwa walks up to the corner, hands in his pockets. He does not act aggressively at any point during the exchange. No one around the pair reacts in any way to what Musiwa is doing or saying. And then after Braxton fires the first shot, we see Musiwa turning and falling with his hands empty, free and empty. We know from the video later on that he did have a firearm, but it is clear from the video that that firearm was not visible. And frankly, I mean, it was a large neon orange pistol. And had it been visible to the participants, it would have been visible on the video. I mean, that's clear from the moment when it's actually removed from his body after his death. So there is nothing, as the district court found, there is nothing with regard to Mr. Musiwa's conduct that suggests that he was in any way aggressive. So let's turn to Mr. Braxton. So for hours and up to a minute before this shooting, Mr. Braxton is repeatedly handling, brandishing his gun. We can see about a minute before the shooting, he gets it back from his friend, Mr. Sayers Jr. He puts it in his right hip. Why is the brandishing as significant as the district court may have thought that it was? I mean, brandishing a gun repeatedly is sort of neutral in its quality, don't you think? Well, I think, Your Honor, ultimately we're talking about self-defense. So we are looking at this record for evidence of what was in Mr. Braxton's mind at the moment of the shooting. And I think that it is a permissible inference from the fact that he's been constantly handling this gun throughout the encounter, that it's right in his right hip pocket as he walks up into Mr. Musiwa's face, that it's permissible to infer from that, that defending himself was not at the forefront of his mind in that encounter. I do agree. I think some of the other evidence is probably stronger on that point. And let's turn directly to that. Mr. Braxton is the first person to pull a gun and to fire. No one around him, again, reacts until he pulls that gun out, at which point you can see everyone around shocked and start running away. Braxton fires, not once, not twice, five times, actually fires six times. Five of them hit Musiwa. And the forensic evidence is Musiwa was shot once in the chest. And then we can see from the video, he's twisting to run away or just, I mean, obviously we don't know whether he was voluntarily running away at that point he was shot. Isn't that sort of a problem here? I mean, that the only thing we have is video. We don't have any testimony about the interaction between Mr. Musiwa and Mr. Braxton. We are drawing these inferences just from the video, right? That's correct, Your Honor. I mean, in terms of what happened in that moment, I think there's ample evidence from before and after the shooting that also bears on the question of self-defense. In terms of what happened in the moment between the two of them, you're right, Your Honor. We only have the video. We don't know what was said, that's for sure. But the video shows us what happened to a very large degree. And again, when the court is reviewing for clear error, the court is simply looking to see whether there was evidence in the record that supported the finding. And the evidence from the video that shows us what happened, that shows Musiwa turning away as Braxton continues to fire. And the district court specifically asked in sentencing, was this a kind of gun that would automatically continue to fire or does he have to pull the trigger for each shot? And the answer is he has to pull the trigger for each shot. So he continues firing as Musiwa is falling away. Not only that, we know from the trial, which the district court obviously presided over, Braxton didn't flee the scene, as you might expect someone who was defending themselves. He went across the street, but he kept shooting. He shot nine more times in the course of this gunfight that resulted in 71 rounds fired, two people dead and two other people injured. So again, that is evidence beyond what happened in that moment from which the district court could permissibly have inferred that Braxton did not fire in self-defense. And finally, there's mention of the Facebook messages. I think, again, these are probably second-tier relevance, but I think they're significant because what the district court was looking for, again, is what is the evidence of what was in Braxton's mind when this happened? And we have his Facebook messages from the immediate aftermath of the shooting where he is saying to the family of Lama Bassers Jr., I didn't do it, I didn't shoot him, but there's absolutely nothing to suggest that he was in fear of his life, that he only shot in self-defense. So these facts, the district court categorizes them in four areas. The problem that I have with the Facebook messages, and it's clear error is certainly a high bar, and if the record permits inferences even that we disagree with, it's still affirmable under clear error review, but it can't be entirely speculative. The district court can't just guess. And so that's the quality that I'm drawing from the district court's reliance on what was not said in these Facebook messages. So help me understand, are they even in the mix or the government's certainly relying on them to the extent the district court did, but I'm just not seeing this as the sort of thing that would really advance or support the district court's findings. Absolutely, Your Honor. I mean, as I say, I think that the Facebook messages are probably the least significance of the four categories, but I do believe they still support the finding. And I think if you look at how the district court characterized these, the district court was really trying to answer the question in the immediate aftermath of the shooting, was Braxton acting in a way that would suggest that he had shot in self-defense or was self-defense, as the district court said, a Johnny come lately concept, that's the district court's words. And after the fact justification or attempt at a legal justification for the shooting and the Facebook messages suggested to the court that it was the latter, that if it indeed it had been a situation of self-defense from the beginning, those messages would have looked very different. So while I agree that that is probably the least significant of the four categories, I believe they do still support the district court's finding. And I'll turn. Before you turn. Absolutely. Sorry, but tell me then if the Facebook messages are the weakest, what is the strongest? The five shots? Is that what? Absolutely, Your Honor. I think the categories of the five shots and the fact that Musiwa did not act aggressively, was not visibly armed and is can't be seen making any motion toward the gun that we only know that he had because of later. I think those are the most significant. I think that the handling of the gun and the Facebook messages, I think there are permissible inferences to be drawn from that that also support the district court's finding. But I think that those two categories are the most significant categories. Do you need those two things? Which two to be clear? The Facebook and the brandishing. I think that I think it would be sufficient on a clear error standard to affirm the district court just on the conduct on Braxton and Musiwa's conduct. But again, we're here on clear error reviews. So we're looking for as a general matter, what are all the elements of the record that support the finding? And those do as well. Thank you. I'll briefly touch on the harmlessness argument. Obviously, the district court said in so many words to this court that the guidelines range was not the only thing or even the major thing driving the sentence. That a statutory max sentence of 180 months, 15 years, is entirely appropriate in this case regardless of the self-defense issue. The court rested that conclusion on the 3553A factors. Well, you rely pretty heavily on Geesewine. Yes, absolutely, Your Honor. But in Hess, we said that's the rare case. Geesewine's the rare case. So how does Geesewine advance your argument here? It seems that it's very specific to its facts and those facts are not present on this record. Well, I agree, Your Honor, that this case falls somewhere between Hess and Geesewine on the spectrum of harmlessness. Our position is it falls closer to Geesewine. Obviously, in Geesewine, you had two sentencings to the statutory maximum. Here, we only have one. But what I would really point the court to is the clarity of the district court's explanation. I think that's really what was driving the difference between Hess and Geesewine. I think, obviously, Hess ended up having a very complex guidelines calculation and the court found it ultimately not enough that the district court suggested that it would reach the same sentence no matter what. I think the discussion here was much clearer and much more explicit than in Hess. Is that the most relevant data point, the adequacy of the explanation? I mean, then it would seem to make it the ordinary case because we expect district courts to explain their sentences in order to affirm them as procedurally reasonable, right? So it would seem that that's a data point that, in my view, would not make it a rare case. There has to be something else. Well, I think it's the adequacy of the explanation for why the court would reach the same result even in the absence of an error. So obviously, we're presuming an error here, which we believe did not occur. But the difference between Hess in this case is the depth and specificity of the court's discussion of even in the absence of self-defense or in that case of the vulnerable victim enhancement, I would still reach the statutory maximum and here's why. And in this case, the court walks through the seriousness of the offense. The fact that we have 71 shots fired, two people dead, two injured. And it's absolutely undisputed that Braxton's conduct was the but-for cause of that, setting aside the question of legal responsibility. The need for deterrence. The fact that Braxton had been sentenced to 72 months for unlawful possession. He ended up serving 39 when this court reversed that conviction. But only four months after he got released, this incident occurred. So the need for deterrence here was massive. The need to protect the community and the danger of an unwarranted disparity. I mean, the court said, look, if I sentence Mr. Braxton in the guideline range for a 922-G, that is going to massively under-reflect the seriousness of this crime and create a disparity in the opposite direction from the type that this court is usually reviewing. So I think that the detail and the specificity of that discussion is what raises this case above the level of Hess and brings it closer to the level of Guy Swine. So if there are no further questions, we'd ask that the sentence be affirmed. Before you sit down, Judge Kelly, do you have any questions? I have no further questions. Thank you. Thank you. On that harmlessness point, Your Honors, although at the very end, the district court stated that it would sentence Mr. Braxton to the maximum sentence regardless of the self-defense issue. Those are the words he used. Throughout his explanation and description of the 3553 factors, the court in analyzing this case said, what's more serious than when a person dies? That's the most serious consequence of a felon in possession of ammunition. And of course, that conclusion is only able to be reached if the court determines that the killing was unjustified. Self-defense is a justified killing under the law. And so the court's decision on that and the court's commentary on how it would sentence Mr. Braxton is suffused and altered by its conclusion that this was an unjustified killing. The only other point I would like to raise with the court was, the government mentioned that there were nine additional shots for Mr. Braxton after he shot the six shots in the initial confrontation. Of course, that fact was not relied on by the district court, likely because there were other people shooting at the time. And so that, again, goes both ways. Mr. Braxton may have been shooting in self-defense from these other people shooting. If there are no further questions, we ask that the court reverse and remand. Thank you. Thank you. All right, thank you, counsel, for your helpful arguments. And the case is submitted and counsel's excused.